21-52-01 Eliezer Jimenez v. United States of America. Arguments not to exceed 15 minutes aside. Mr. Tutt for the appellant. Thank you, Your Honor. May it please the Court, my name is Andrew Tutt. I represent petitioner appellant Eliezer Jimenez. I'd like to reserve two minutes for rebuttal. The Court should reverse the decision below and hold that the collateral attack waiver in Mr. Jimenez's plea agreement cannot stand as a barrier to his resentencing because its enforcement would work a miscarriage of justice. I'd like to make three points if I can. And you keep your voice up. Yes, sir. Yes, Your Honor. Yes, I'd like to make three points if I can. First, the government does not dispute the central issue in this appeal. Namely, that appeal and collateral attack waivers cannot be enforced when the enforcement would work a miscarriage of justice. Courts of appeals have all said verbatim in the context of Section 2255 habeas petitions. Indeed, that is the very reason that federal prisoners can seek resentencing under Section 2255 when a state conviction is vacated in the first place. Third, every important argument the government makes is wrong. The government is wrong about the scope of the miscarriage of justice exception recognized by the other circuits. The government is wrong that the advisory mandatory distinction matters in this case. And the government is wrong that enhancing a sentence on the basis of an unconstitutionally procured state conviction is analogous to a garden variety guideline sentencing error. This is an important case for the protection of rights of criminal defendants in this circuit. Mr. Haman has received an enhanced sentence on the basis of a Minnesota conviction that was, quote, obtained in violation of petitioner's rights under the laws and constitution of the United States and the state of Minnesota. And it has been vacated. Yes, Your Honor. Just thinking about this at a high level of generality, why is it more of a miscarriage of justice to have a conviction that has been overturned versus law that has been changed? Because I believe Bullard was about a change in law that showed that a career criminal enhancement or the guidelines enhancement didn't apply. And we said that that wasn't even cognizable under 2255. I know they had the straight sentence in there about prior convictions being different, but if we're talking about miscarriage of justice, why is this more of an offense to justice than that? So I want to give two answers to that question. I think the first engages with Bullard on its own. The court talked about vacature of prior convictions working miscarriages of justice in its description of what settled law is. The court is generally very hesitant to write something as if it is a matter of settled law if it's not. Very good panel on that case who understood the distinction that they were drawing and drew that distinction specifically. Second, I want to say that there actually is a material distinction between a change in law and a change based on a vacated conviction specifically. Vacated convictions are different from almost any other error that happens at sentencing because the defendant is not permitted to collaterally attack the constitutionality of the sentence at the sentencing hearing. That was the holding of the Supreme Court. In some sense, at a sentencing hearing, it is both too early to attack the sentence and too late because you're already being sentenced and it hasn't been vacated yet. And that's why the court opened the door to this being the compromise. Is that not true of changes in law if there's a settled precedent that rejects or rebutts an argument and then a new precedent comes out overruling that like what happened in Havas with the en banc court? I think the important distinction in Havas, though, is that that was a close question that any litigant, any person at sentencing could have brought to the court's attention and many had. I can be at a sentencing proceeding and I can say you can't apply the career offender enhancement to me. It doesn't apply to inchoate offenses. And I can take my appeal all the way up if I want to. But you can't do that with a vacated conviction. There's no way for an appellate court to say no, actually, it was unconstitutionally procured because it's barred. You're not supposed to collaterally attack it at that hearing. What you're supposed to do is accept it, take the sentence, and then come back on 2255 and you get a whole new statute of limitations under 2255 as a result of that. And given that the Supreme Court's reason for giving you that new statute of limitations is because the Supreme Court has held it comes in under a miscarriage of justice exception for Havias purposes, it has to also work to overcome the collateral attack waiver, at least in these unique circumstances. What's your best case that you're going on to show us that this is effective in the Sixth Circuit or in the Supreme Court? That might be better. Well, the Supreme Court is always the best one. What I will say is the Johnson case is the best for us. It's not on all fours. It's about Havias corpus. The Foley case is the best case for us on all fours with us. The Foley case, by a district court, not a court of appeals, but applying a miscarriage of justice exception, a fact-based one with guided discretion. So it's not a per se rule, but went through the factors and said there was an error that the attorney in that case was ineffective. The collateral attack waiver didn't look like it had been negotiated in a way that had specifically contemplated that there would possibly be a vacature so there'd been no horse trading over it. The court really went through and looked at the facts of that case in a careful way and came to the conclusion that it was a miscarriage. This court doesn't have to do that in the first instance. The court below hasn't had the chance, and it's really the more appropriate court to do so. What are you suggesting that we do? Remand it for hearing on what? You give the court below a legal standard to follow or guided discretion to follow. This is what you want to look at. It needs to be narrow. It needs to be exceptionally limited. It may not even be available in this case. We're okay with that. Does it have to be on ineffective assistance of counsel or on some other grounds? We don't think it has to rise to the level of ineffective assistance. We think those are different buckets. We think that ineffective assistance is one bucket, and we'd like a reversal on those grounds as well, and I can talk about that. But we think that having a tinge of ineffective assistance plus other factors can give rise to miscarriage. And the reason that we think that is – Let me ask you about that tinge of ineffective assistance. What are you arguing was the ineffective assistance of counsel? So we haven't had a chance to develop the facts, but given what we do know, it seems that there was some awareness that this was – that this could be vacated in the near future or was in the process of being challenged. But we do not understand why Mr. Jimenez's counsel did not simply get a narrow exception. We don't disagree with the government that collateral attack and appeal waivers serve important functions in eliminating especially frivolous litigation. But here you had something that didn't look on its face like it was frivolous. It looked like it was a real issue, and we don't have any evidence that there was any effort at all to just even ask the government, can we just put an exception in this waiver? Can I ask about prejudice? So as I understand your two theories, one of which is a very long continuance and the other of which would be adding this term, I mean, both of those kind of depend on external factors like the district court. It seems quite unlikely to me that the district court would have stayed it for the nine months. So how do you go about showing prejudice on that theory or the other theory, which depends on the government agreeing to this term? On the prejudice from the continuance theory, there, you know, it's, the argument is he would have picked up the phone, called counsel in Minnesota who was handling the Minnesota vacature and said, like, can we speed this up and I can get a three-month continuance and maybe we can convey to that court that it really, they need to do this faster. So there is an element of bringing forward the, I don't think a nine-month continuance is plausible, but it's that his attorney would be diligently working to actually make it relevant for the sentencing hearing. None of these facts have been developed. None of these have been developed, unfortunately. You would concede that none of these were raised really by Mr. Jimenez in his 2255 petition, were they? What we do, we would say that he put in the Strickland standard. He only, he had a very short, so I don't want to concede that, but I want to say that he made a. Well, I think he made reference to a Kemp. I mean, it looked like he just cut and pasted from something. Yes, Your Honor. He was trying to, I mean, if you read the motion, the way I read the motion is he says, I want resentencing. I have a vacated conviction. He doesn't mention his collateral attack waiver. He doesn't. And so, you know, as I read 2255, as I read the text of it, you know, it says, unless the motion and files and records of the case conclusively show the prisoner is entitled to no relief, the court shall hold a hearing and determine the issues. And so this is a special situation where you have a much, a very generous standard that really does sort of obligate the judge to say, okay, well, what are you asking me for? You're asking me for resentencing. Is there a path to resentencing here? And he even has Strickland in the motion. Well, what's the best language that the petitioner used to say, I'm looking for ineffective assistance of counsel in this case, and here's what he did and here's what he should have done. Was that in there? That is not in there, Your Honor. The district court said it wasn't there. The district court said that. I want to say, though, the district court did say more than that. And I think the district court felt like it had to say more than that not to err. The district court said he actually disclaimed this, because otherwise the court had an obligation to help him out. So the court said, no, no, he's giving this away. He doesn't want it. But that's not how I read his reply brief. The way I read his reply brief is he's saying, the government has said that I'm trying to get resentenced because I had ineffective assistance. And that's not what I'm saying. That's out of context. You're not saying that the district judge has an obligation to try the case for the petitioner, are you? No, no, Your Honor. No, no. That's too much. No, and I want to emphasize how unique these circumstances are, which is that you have the magistrate judge already going, poring over the record to analyze the miscarriage claim. And, you know, if you look at what the district court did, it slaps you in the face when you read the district court opinion. You can see there's an ineffective assistance claim on the face of what just is written in the background section of the opinion below. So, you know, given that the judge already has that, he has the Strickland standard in the motion. The reply says, I want to preserve all my arguments. And then it says, you know, and it even responds specifically to ineffective assistance, which was a bit of a surprise if he's not trying to do something with ineffective assistance because otherwise why say anything about it at all? It's his second language. He's pro se. We think, you know, give him the chance to make the claim. You know, give him, and if you're going to dismiss, you know, dismiss without prejudice, give him the chance to replete it. Say like, you know, it looks like you might have an ineffective assistance claim. If that's what you're looking to do, though, I'm going to need more and ask him for more. Can I ask you just real quick? Yeah. Oh, I apologize, Your Honor. Yes. So I've had this issue come up before. Do you think the standard of review for us on a district court's conclusion that somebody has forfeited an argument should be de novo, or do you think it should be abusive discretion? I think the government essentially concedes de novo, so maybe we don't need to confront it in this case. But there are some discretionary elements to finding a forfeiture, interpreting what words mean or whatnot if they're ambiguous. Why shouldn't it be abusive discretion? You know, in this case, I think that they would collapse because it was all done on the papers. No one ever was in person. So this court is in the exact same position as the judge below to make that conclusion. So whether the, you know, this court can read the words and sort of provide guidance. So here we don't have live witnesses. Here we don't have evidence. We don't have a hearing. So I think it might matter in another case, but here I think de novo is the right standard. And as Your Honor points out, it seems to be conceded. Thank you, Your Honors. Thank you, Mr. Todd. Good morning, Your Honors. May it please the Court, James Chapman for the United States. I'd like to jump into the ineffective assistance discussion. Our position is that Mr. Jimenez did not raise an ineffective assistance of counsel claim in his 2255 petition, and the court should hold that the district court properly concluded that no ineffective assistance claim was before the court. Did he use language like that in his petition that was pro se? Did he say anything about ineffective assistance or whatever? Your Honor, the only thing he said about ineffective assistance was to cite the language of Strickland and the cases that have come after Strickland. In a general paragraph titled Issues Cognizable Under 2255, that paragraph included a grab bag of other claims that had no application to Mr. Jimenez, claims that could come up at trial, requests for an evidentiary hearing, although he did not actually request such a hearing. So even though he cited the general standard for ineffective assistance, he never argued that his attorney was actually ineffective in his argument section. What was required? I mean, he had a paragraph. He cited the elements of an ineffective assistance claim cited Strickland. As I write opinions, I have a law section and an application section, so maybe he was missing the application section. Is it generally notice pleading at the 2255 initial stage, or do you think you have to prove your entire case at that stage? Your Honor, I think Strickland says what the petitioner must do, and that is identify the acts or omissions of counsel that are alleged to be ineffective. This court's case law following Strickland has followed that rule, saying there has to be more than conclusory allegations. Here we don't even have a conclusory allegation. Mr. Jimenez never even asserted, for instance, my attorney was ineffective. Completely absent. Well, his counsel suggests that maybe the district court should have done a whole lot more, maybe have a hearing, or what does the law require the district court to do when this happens with a pro se petition? What do you think it do? Your Honor, the law does not require the district court to create a claim for the pro se petitioner, and that's what Mr. Jimenez is asking for here. Of course, pro se documents are liberally construed by district courts. There's no question about that, but there's a line between liberal construction of a claim and the creation of a claim. But doesn't it look like at least he might have a culpable claim, assuming that he's raised it because counsel, his counsel says, well, he should have contacted somebody in Minnesota or asked for a postponement of the hearing until they worked that out or something else. Doesn't the record show at the time he entered his plea of guilty that he had raised it and his counsel said it won't make any difference anyway or something to that effect? Your Honor, I want to be careful on the timeline. So at the time of the entry of the plea, there was no discussion, at least that's indicated in the record, that his counsel was aware that he was even contemplating challenging this Minnesota conviction. The plea occurred in July of 2019. The joint motion up in Minnesota was not filed until August of 2019. And so at the time of the plea, there was no discussion of this potential vacature. So as I understand the government's argument here is that you're saying that Jimenez just assumed the risk that in the future this conviction may be vacated but he would be out of luck, but he agreed to this deal knowing that that's a potential in the future. Is that fair to say what your position is? Yes, Your Honor. What from the sentencing record or anything in the record can you point to to say that Jimenez actually knew that a future vacature of his conviction could affect, could have effect on his sentence if it were applied? Is there anything there or was he just totally in the dark himself based on the record? Well, Your Honor, I think this court's case law is clear that the validity of a waiver, waivers do not require clairvoyance. Waivers do not require... But is there anything to indicate he knows that there could be a vacature in the future? And I guess I'm looking, is there anything we can hang our hat on here to say that he actually is making a knowing decision that he's taking that risk? Well, Your Honor, so the conduct in the underlying case occurred in 2015. His sentencing in that underlying case occurred in 2016. And so whatever, we don't even know what the statutory or constitutional problem with the case is. The joint motion in Minnesota simply asserts that it was obtained in violation of his rights. Didn't he object to the PSR on the ground that he thought the conviction might get overturned? I thought he had, and then that was withdrawn because of... Correct, he filed a pro se objection. Wouldn't that suggest that he knew that there was the possibility that the conviction might be overturned? Well, yes, Your Honor. The only, I want to be careful and say that obviously the objection to the PSR occurred after the guilty plea. But again, his sentence in that underlying case was from 2016. Whatever the legal or constitutional problem with that conviction was would have been known to Mr. Jimenez in 2016. And yet he waited years to try to get it vacated. On the miscarriage of justice exception, I thought it was a pretty good argument. Your friend on the other side distinguishing Bullard on the ground that in Bullard at least you had the opportunity to raise the objection in the hearing. Maybe it was foreclosed by precedent, but then you could try to get that precedent overturned on Bonk as happened in Havis. But for this type of claim with an overturned conviction, you can't really raise that at the sentencing. So it almost suggests that there's no opportunity anywhere to raise that. And so why wouldn't that be a theory of miscarriage of justice? Your Honor, I don't think that should have any way. First of all, Mr. Jimenez had several years he could have vacated this conviction between the time of his sentencing in that conviction and the time of his plea or sentencing in this case. So he had several years of opportunities to vacate that conviction. More fundamentally, that distinction I'm not sure makes a difference legally. There's a possibility somewhere to raise the claim. I would say it's fact-bound, so that might be one distinguishing factor. But just legally, it seems should there be a possibility? And if not, isn't that a miscarriage of justice? Well, Your Honor, in this case, Mr. Jimenez waived his right. So we have a strong waiver in this negotiated plea agreement. Johnson, the Supreme Court decision, says that if you go back and get a prior conviction vacated, that opens up a new one-year period of time under 2255. If he had not waived his right, he would have a much better argument to come back, and then he has a whole year to file a habeas petition. This case, of course, is different because Mr. Jimenez waived his right to do that. Do you think this Portis case that's just recently come out has any effect on your position? Are you familiar with that? I studied it last night, Your Honor. I don't think Portis directly applies in this case. I think Portis is a similar decision along the lines of Bullard involving a post-sentencing change of law. If anything, I think it helps our case. I think it solidifies some of the arguments we made. It talked at length about plea agreements allocating risk, not requiring clairvoyance. Chief Judge Sutton sort of went through and articulated the various limited grounds that this court has invalidated waivers on. And, of course, very briefly touched on the miscarriage of justice exception and simply observed that this court has never applied it in a published decision. So, if anything, I think it helps our case. So just thinking about this in the abstract and where this miscarriage of justice standard comes from for overturning provisions of an agreement, we've repeatedly said that plea agreements are essentially analogous to contracts and we should apply contract law rules. And one of the contract rule principles that is cited is the void as against public policy rule. So if we looked there, at least it would provide what seems to me legal grounds for adopting this type of exception for plea agreements because it would be contractual. Why wouldn't that standard apply here? Why would this waiver not be against public policy since he's now being sentenced to a greater amount because of a conviction that has been overturned that was found, at least conceded to be constitutional by the government in the earlier case? Your Honor, I have a few responses to that. First, I do want to push back slightly against sort of the latter part of your question, which is that he's been sentenced to an enhanced sentence because of this conviction. We simply don't know that. That's the entire purpose of the advisory mandatory guideline distinction. The court could remand this case and Chief Judge Reeves could impose the exact same sentence as Mr. Jimenez has today. So I don't think we can say legally that this prior conviction was used to enhance his sentence because of the nature of advisory guidelines. On the question about public policy, I think public policy actually extremely strongly weighs in our favor in this case. Waivers are consistent with public policy. They benefit the government by saving time and resources in arguing appeals. They benefit defendants because they give defendants a very weighty bargaining chip in negotiations with the government. And third, they benefit society because society benefits from finality. And all parties in a negotiation are going to benefit from clarity and consistency in application of waivers. And if the court chooses to recognize a miscarriage of justice exception, a narrowly tailored version is more consistent with all of those principles than an amorphous version. And, of course, our primary argument is that the court doesn't even need to reach that question because under the court's case law it- Does the government actually have a kind of uniform position on whether this exception should exist? I missed the beginning of your question. Does the government have a uniform position that has been articulated about whether the miscarriage of justice exception actually exists? Your Honor, I frankly am not aware of the position and any position we've taken in other cases. What do we do with the statement by defense counsel when the issue was raised about the prior case in Minnesota? He said it won't make any difference or something to that effect. Do you agree that's sort of what he's saying? Yes, Your Honor. I believe the exact quote was it has no legal significance. Well, that's not true, is it? Well, so, Your Honor, looking at that statement in isolation, I agree there may be something going on there. It looks like he got some points because of that prior conviction, right? And so, Your Honor, first of all, I want to emphasize an ineffective assistance claim is not before the court and certainly the merits of any such claim are not before the court. But if it was, that would be raised first of all, I guess, right? So, I think there would have to be a remand and further fact-finding about what his counsel was thinking when he made that statement, what that statement meant in the context. I think there's at least an argument that he was saying, look, the fact that this is being challenged currently at the time of sentencing, that has no legal effect on sentencing today. The points apply even if it's being challenged. I think there's at least a plausible argument that that's what he intended and that's, of course, accurate. But you're saying he didn't raise it because that's what the district court said. Correct, Your Honor. I have 40 seconds remaining. I would welcome any further questions from the court. Okay. I'll ask the court to affirm. Thank you. Thank you, Mr. Chapman. Thank you, Your Honors. I'd just like to make a few points. Even ordinary commercial contracts are not enforceable in every circumstance, and this is nothing like an ordinary commercial contract. It's a contract where a person's constitutional rights and liberty are at stake. We think that the court should recognize that there is a miscarriage of justice exception, give the courts below some guidance about how to apply it without undue generosity, and explain why this case meets the standard. Ultimately, courts need to balance what the parties reasonably intended, the constitutional protections that criminal defendants must have and the knowledge that they must have of the rights that they're giving up, and what the court will ultimately have to sanction and enforce if it refuses to recognize the miscarriage of justice exception. If this court rules that Mr. Jimenez cannot bring this post-conviction petition, what the court is sanctioning is a sentence that was enhanced on the basis of what everyone knows is an unconstitutional conviction. This conviction is void, does not exist, and yet his sentencing proceeding was tainted by the collateral consequences of that conviction. The Supreme Court has said that that is why it is a miscarriage of justice to use such convictions in sentences, why they must be reopened. Quote, it works a complete miscarriage of justice. If your position is upheld, then it goes back to the district court to make these findings, and if it finds ineffective assistance, the whole thing is set aside and he starts again, and your client possibly could get more time, right? It's not in the guidelines as we look at it now, but they might say they were mistaken or something like that, right? It might be theoretically possible, but I think given that he would only be coming to the court with less of a criminal history, and I see my time is up, but less on the table counting against him, I think that Judge Reeves would be inclined to reduce the sentence, and we ask that he have that opportunity. Thank you, Your Honor. We urge you to reverse. Thank you, and thank you to counsel on both sides, and Mr. Tutte, I notice that you and your fellow counsel are handling this pro bono. We thank you for your efforts on behalf of appellant. We'll take the case under submission, and the clerk may call the next case.